**WELDER et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 11208.**

Circuit Court of Appeals, Fifth Circuit.

April 11, 1945.

584

of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Unsuccessful with the commissioner and in the Tax Court, petitioners here, not still but again,[1] for this time the petition involves different tax years, 1938 and 1939, and different articles of partnership,[2] are still urging upon us that oil royalties derived from their separate property have, because of the intervention of the partnership, James F. Welder Heirs, lost their separate status and character and become community. In addition, insisting that royalties from gravel and restored depletion are, under settled Texas law, community property, they seek relief from the ruling of the Tax Court that they are, and should be taxed as, separate property.

On the point that the intervention of the partnership operates to destroy the identity and status of their separate lands and to prevent their being traced into the royalty received, petitioners argue long and vigorously. No authorities are, however, presented holding that the formation of a partnership has such result, nor do their arguments from analogy any better support them, and we think it is clear that no such result has followed here.

Whatever mists of confusion and differences of opinion may have existed before Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799, as to the principles which determine whether particular property of members of a marital community is held in community or separate ownership, have been completely dissipated by that decision. It affirms that Article 16, Sec. 15 of the Texas Constitution, Vernon's Ann.St., makes the method by which property is acquired during coverture the test of when an acquest by the wife becomes a portion of her separate estate. So affirming, it declares that if the method be by gift, devise, or descent to the wife, then the Constitution makes the property separate, while if the

Harry C. Weeks, of Fort Worth, Tex., and Wright Morrow, of Houston, Tex., for petitioners.

Hilbert P. Zarky, Sewall Key, J. Louis Monarch, and Warren F. Wattles, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen.; and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau

[1] For their previous appearances see Crabb v. Com'r of Int. Rev., 5 Cir., 119 F.2d 772; Id., 5 Cir., 121 F.2d 1015; Id., 5 Cir., 136 F.2d 501.

[2] On Sept. 1, 1938, the Welder girls having in statutory proceedings been declared femes sole for mercantile and trading purposes, amended articles of partnership were entered into, and the Welder properties, the same which have been involved in the other suits, have been operated under these amended articles.

method of acquiring be different, then the property is community, and that once the separate character of property is established, it retains that character through all mutations and changes as long as it can be traced.[3]

In Western Gulf Petroleum Co. v. Frazier, Jelke & Co., 163 S.W.2d 860, 862, where it was sought to be claimed that stock in a corporation which had been given to a married woman as her separate property had lost its identity, the court, on the basis of findings that the property could be traced, denied that this was so. Citing many authorities, including Arnold v. Leonard, supra, Stephens v. Stephens, Tex. Civ.App., 292 S.W. 290, and Stringfellow v. Sorrells, 82 Tex. 277, 18 S.W. 689, it declared that since the stock maintained its traceable character throughout the various mutations into the different organizations shown in the findings, and had never become so commingled with community property as to be unidentifiable, it remained separate property. It thus appears that though the presumption that all property coming into the name or the possession of either member of the community during coverture is community, greatly aids the one who claims that it is, it is settled law in Texas that this presumption is rebuttable and that if property is once shown to be separate, that character never leaves it but follows it through any and all of its mutations as long as it can be traced. None of the mutations in fact affect its character. None of them make separate into community property. When, however, as a result of commingling and confusing with community property, it can be no longer identified as separate, the presumption becomes operative, and it is said to be community. There

was not, there could not be, any such failure to trace here. The separate lands from which the royalties came underwent no mutations, were the subject of no confusion. They were the very same lands which had been originally given. It is quite clear that the Tax Court was right in respect of these royalties.

As to the gravel, no principle is suggested, and no case is cited which require gravel royalties to be treated differently from oil royalties. The very text petitioners cite,[4] by placing gravel and minerals in the same category, makes against, not for, the contention. Further, the cited text makes clear, as Sec. 411 of the same volume, at page 500, makes more clear, that timber, marketable sand, gravel, stones, minerals and the like, growing on the wife's separate land, belong to the wife, "except in those cases where they are impressed with the community character by reason of the bestowal of the community labor or funds upon them."[5]

Finally, as to the restoration of depletion, it is sufficient to say that restoration means to return or give back and that since it is undisputed that the depletion was allowed to, and enjoyed by, the separate estates, no estate but the separate estates could possibly restore it. If, however, we examine petitioners' course of reasoning, that the income represented by the restored depletion was not identifiable as separate income, and, therefore, must be held to be "other property" not identified as separate, which, under Texas law, is community, we should have no difficulty in concluding that this is not so. For if, as we have held, the bonus against which the depletion was allowed, was separate in-

---

[3] As to lands, after pointing out that crops raised on, and rents from the wife's separate lands have been consistently held to belong to the community, the court said: "It is evident that everything relating to land that has been recognized by the Supreme Court as becoming separate property of the wife is embraced within the constitutional definition of her separate property, *if we bear in mind that property remained separate through all mutations and changes.*" (Emphasis supplied.) Arnold v. Leonard, 114 Tex. at page 542, 273 S.W. at page 802. Speer, Law of Marital Rights in Texas, Secs. 426-27-28.

[4] Speer, Law of Marital Rights in Texas, par. 365, p. 440.

[5] "But the spontaneous growth and output of her land,—her uncut meadows of hay; her standing trees; undug sand and gravel; unquarried stone and unmined minerals—cannot in any sense belong to the community. And the segregating of these things from the soil and preparing them for market can not affect their status as separate property and convert them into community, unless it be done with community funds or labor. It then becomes fructus industriales, and would be such a commingling of separate and community property as that the wife could not distinguish and separate them, and the whole would properly be community." Id. 500–01.

come, the depletion when restored, having been deducted from that separate income, must be held to retain and follow its character. The point that the bonus, after the nonproductive character of the lease is determined and by surrender of the lease the owner has both the land and the money, becomes really forfeit money, has seemed, and still seems to the writer of this opinion,[6] to have great force in arguing against the treatment of bonus as advance royalty income. Argument on this score is over, however, in the light of the authorities which clearly establish that the bonus is, and will be treated as advance royalty, and, therefore income, and that the restored depletion must likewise be treated as income. The judgments of the Tax Court were right. They are affirmed.

---

[6] Cf. Hutcheson, C. J., dissenting, in Crabb Com'r, 5 Cir., 119 F.2d 772.